UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STEVEN PIRRO, *et al.*,

                Plaintiffs,

v.

                5:12-CV-1364
                (GTS/TWD)

NATIONAL GRID, *et al.*,

                Defendants.
_____

APPEARANCES:                              OF COUNSEL:

THE WAGNER LAW GROUP, P.C.                DAVID G. GABOR, ESQ.
  Counsel for Plaintiffs
99 Summer Street, 13th Floor
Boston, MA 02110

SEYFARTH SHAW, LLP                        BARBARA H. BOROWSKI, ESQ.
  Counsel for Defendants                   MARK CASCIARI, ESQ.
131 South Dearborn Street, Suite 2400
Chicago, IL 60603

BOND, SCHOENECK & KING, PLLC              LOUIS ORBACH, ESQ.
  Co-counsel for Defendants                LUCY S. CLIPPINGER, ESQ.
One Lincoln Center                        ROBERT A. LaBARGE, ESQ.
Syracuse, NY 13202

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this employment-benefits action filed by Steven Pirro and 128 other current or former employees of National Grid ("Plaintiffs") against National Grid and six other entities ("Defendants") pursuant to Employee Retirement Income Security Act ("ERISA") and New York State common law, is Defendants' motion to dismiss Plaintiffs' Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 21.) For the reasons set forth below, Defendants' motion is granted.

I.     RELEVANT BACKGROUND

   A.     Plaintiffs' Amended Complaint

Generally, in their Amended Complaint, Plaintiffs allege that, in 1998, Defendant Niagara Mohawk converted the Niagara Mohawk Pension Plan ("the Plan") from a "Final Pay Plan" to a "Cash Balance Plan," without first giving Plaintiffs' timely and proper notice of the conversion, which caused Plaintiffs to remain employed by Defendants and suffer a decrease in the value of their pension benefits.  (Dkt. No. 6.)  Because this Decision and Order is intended primarily for the review of the parties, the Court will not recite the remaining factual allegations in detail, but will refer the reader to the Amended Complaint in its entirety.  (*Id*.)

Based on these factual allegations, Plaintiffs assert the following six causes of action: (1) a cause of action claiming that Defendants failed to provide Plaintiffs with any notice required by ERISA § 204(h), because the letter sent by David Arrington in May 2008 and subsequent brochure did not describe themselves as a ERISA § 204(h) notice, and did not even reach some Plan participants; (2) a cause of action claiming that Defendants failed to provide Plaintiffs with proper notice required by ERISA § 204(h), because the notice was factually deficient, and was not received a reasonable time before the effective date of the amendment; (3) a cause of action claiming that Defendants breached their fiduciary duty under ERISA, because they provided documents "and other information" containing implied guarantees (that the Plan participants would make more money under the Cash Balance Plan than they would under the Final Pay Plan) without supporting evidence, for the purpose of saving Defendants money and deceiving Plan participants; (4) a cause of action claiming that Defendants breached their fiduciary duty under ERISA, because they provided documents to some of the Plan participants knowing the

documents would act to guarantee the plan, but Defendants failed to take appropriate action to ensure that guarantee; (5) a cause of action claiming that Defendants breached their agreement with the Plan participants under New York State common law, because Defendants (a) breached the aforementioned guarantees, and (b) breached their promise to consistently provide quarterly statements; and (6) a cause of action claiming that Defendants defrauded Plan participants under New York State common law, because Defendants deliberately told "lies" or "half-truths" about the risk inherent in the Cash Benefit Plan, in order to save Defendants money and avoid employees choosing to work elsewhere. (Dkt. No. 6.)

### B. Parties' Briefing on Defendants' Motion

#### 1. Defendants' Memorandum of Law in Chief

Generally, in their memorandum of law in chief, Defendants assert three arguments. (Dkt. No. 21, Attach. 1 [Defs.' Memo. of Law].)

First, Defendants argue, Plaintiffs' first and second causes of action should be dismissed for each of two alternative reasons: (1) Defendants' notice–which was distributed on May 14, 1998 (through the "Arrington Letter"), and again on May 20, 1998 (through the "Reighter Notice")–complied with ERISA § 204(h), because it contained a summary of the amendment written in a manner calculated to be understood by the average plan participants, it contained the effective date (i.e., July 1, 1998), and it was distributed more than 15 days before that date; and (2) in any event, these causes of action are time-barred regardless of whether the governing limitations period is New York's three-year limitations period for statutory violations or New York's six-year limitations period for contract claims, and regardless of whether the limitations period was not triggered by the Arrington Letter or the Reighter Notice, but by the issuance of the

3

Summary Plan Description in March of 2000.  (*Id*. at 4, 7-13 [attaching pages "2," and "5" through "11," of Defs.' Memo. of Law].)

Second, Defendants argue, Plaintiffs' third and/or fourth causes of action should be dismissed on each of four independent grounds: (1) both causes of action, which assert claims of breach of fiduciary duty, rely on the same factual predicates (i.e., aspects of the Arrington Letter and Reighter Notice) as do Plaintiffs' ERISA § 204(h) claims; (2) the Arrington Letter and Reighter Notice did not contain any material misrepresentations or guarantees sufficient to give rise to a breach-of-fiduciary-duty claim (and the fact that Defendants may have eventually decided to stop sending participants quarterly statement is immaterial, particularly because the regulations governing at the time did not require that such quarterly statements be sent); (3) these claims are time-barred under ERISA § 413, whether the three-year period or six-year period is used, because Plaintiffs had actual knowledge of the alleged breach in 1998 or, at the latest, in 2000 (and Plaintiffs have not alleged facts, under Fed. R. Civ. P. 9[b], plausibly suggesting their entitlement to the "fraud or concealment" exception in  ERISA § 413); and (4) Plaintiffs' fourth cause of action is duplicative of their third cause of action and, in the alternative, is an improper attempt to base a breach-of-fiduciary-duty claim on the non-fiduciary act of amending an ERISA plan. (*Id*. at 4-5, 14-22 [attaching pages "2," "3," and "12" through "20," of Defs.' Memo. of Law].)

Third, Defendants argue, Plaintiffs' fifth and sixth causes of action should be dismissed for each of two alternative reasons: (1) their state common law claims for breach of contract and fraud are preempted under ERISA § 514, because they "relate to" the Plan (in that they are premised on the conversion of Plaintiffs' pension plans and the resulting value of Plaintiffs'

4

pension benefits under the plan, and they require a reference to the Plan to calculate a recovery under either claim); and (2) their state common law claims for breach of contract and fraud are preempted under ERISA § 502, because they arise from the same facts and circumstances as do Plaintiffs' ERISA claims, and ERISA § 502 sets forth the exclusive mechanism for enforcing rights guaranteed under ERISA. (*Id*. at 5, 22-26 [attaching pages "3," and "20" through "24" of Defs.' Memo. of Law].)

### 2.  Plaintiffs' Opposition Memorandum of Law in Chief

Generally, in their opposition memorandum of law, Plaintiffs assert four arguments. (Dkt. No. 26 [Plfs.' Opp'n Memo. of Law].)

First, in response to Defendants' arguments regarding Plaintiffs' first and second causes of action, Plaintiffs argue as follows: (1) Defendants' notice did not comply with ERISA § 204(h) because (a) the Arrington Letter expressly states it was being sent *before* the adoption of the plan, and the Reighter Notice contains no date at all (and thus cannot plausibly suggest that it was sent after the adoption of the plan), and (b) in any event, neither document notified Plan participants of a significant reduction in the rate of future benefit accrual, but rather contained multiple material misrepresentations; and (2) these causes of action are timely because, (a) the governing limitations period is six years from the discovery of the breach of ERISA § 204(h) where the plaintiff has alleged facts plausibly suggesting that a fiduciary knowingly misrepresented a material fact to induce the plaintiff to act to his detriment, or hindered the discovery of the breach, and (b) Plaintiffs have alleged those facts, and did not discover the breach of ERISA § 204(h) until less than six years before the filing of their Complaint. (*Id*. at 12-18, 23-30 [attaching pages "7" through "13," and "18" through "25," of Plfs.' Opp'n Memo.

of Law].)

Second, in response to Defendants' arguments regarding Plaintiffs' third and fourth causes of action, Plaintiffs argue as follows: (1) the Arrington Letter or the Reighter Notice did contain material misrepresentation and guarantees; and (2) these causes of action are timely for the same reason as described in the preceding paragraph. (*Id*. at 18-30 [attaching pages "13" through "25" of Plfs.' Opp'n Memo. of Law].)

Third, in response to Defendants' arguments regarding Plaintiffs' fifth and sixth causes of action, Plaintiffs argue that these causes of action do not "relate to" the plan, nor do they arise from the same facts and circumstances as do the ERISA claims, because the causes of action relate to, and arise out of, the employer-employee relationship between Defendants and Plaintiffs. (*Id*. at 22-23 [attaching pages "17" and "18" of Plfs.' Opp'n Memo. of Law].)

Fourth, Plaintiffs argue, in the alternative, the Court should grant them leave to file a Second Amended Complaint. (*Id*. at 12 [attaching page "7" of Plfs.' Opp'n Memo. of Law].)

### 3. Defendants' Reply Memorandum of Law

Generally, in their memorandum of law in chief, Defendants assert five arguments. (Dkt. No. 30 [Defs.' Reply Memo. of Law].)

First, argue Defendants, in Plaintiffs' response to Defendants' untimeliness challenge to Plaintiffs' third and fourth causes of action (asserting claims of breach of fiduciary duty under ERISA), Plaintiffs rely only on the "fraud or concealment" exception to the limitations period contained in ERISA § 413, but cite no factual allegations of such fraud or fraudulent concealment by Defendants (or due diligence by Plaintiffs) that are sufficient under Fed. R. Civ. P. 9(b), or that are even sufficient under the more-liberal pleading standard of *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544 (2007). (*Id*. at 4-6 [attaching pages "2" through "4" of Defs.' Reply Memo. of Law].)

Second, argue Defendants, in Plaintiffs' response to Defendants' untimeliness challenge to Plaintiffs' first and second causes of action (asserting claims of breach of the notice requirement under ERISA § 204[h]), Plaintiffs again rely only on the "fraud or concealment" exception to the limitations period contained in ERISA § 413, which does *not* apply to claims brought under ERISA § 204(h); rather, the applicable limitations period is three years for statutory violations, or six years for breaches of contract, running from the date on which there has been a clear repudiation by the Plan that is known, or should be known, to the plaintiff (which, here, occurred in 2000, at the latest). (*Id*. at 6-7 [attaching pages "4" and "5" of Defs.' Reply Memo. of Law].)

Third, argue Defendants, Plaintiffs have identified no misrepresentations in the Plan documents referenced in the Amended Complaint (and now placed before the Court), because the documents do not state that future benefits under the cash balance formula will be equal to or greater than they would have been under the final average pay formula; rather, the documents reasonably summarize the Plan amendment and "encourage" Plan participants to "learn more about" the advantages of the new Plan through, inter alia, reviewing the brochure provided. (*Id*. at 7-11 [attaching pages "5" through "9" of Defs.' Reply Memo. of Law].) Moreover, Plaintiffs do not explain how the Summary Plan Description's 7% present value interest rate assumption was "fraudulent," or even inaccurate at the time it was made. (*Id*. at 12 [attaching page "10" of Defs.' Reply Memo. of Law].)

Fourth, argue Defendants, Plaintiffs have identified no ERISA § 204(h) violation for the

7

following reasons: (1) the Arrington Letter and Reigher Notice reasonably summarized the changes to the Plan, described how the Cash Balance Plan works, offered additional resources for more information, and instructed participants how to read their personalized statements; (2) the fact that the documents did not cite ERISA § 204(h) is legally inconsequential, and the allegation that the documents reached only "some" participants is too indefinite to plausibly suggest a violation pursuant to the pleading standard set forth in *Twombly*; and (3) even if the Arrington Letter, sent on May 13, 1998, was provided to participants before the adoption of the amendment (which it was not, the adoption having occurred on May 14, 1998), it was still valid absent a factual allegation plausibly suggesting that Plaintiffs were harmed by the early notice (which, here, does not exist), and, in any event, the Reighter Notice, which was sent on May 20, 1998, did *not* expressly state that it was being sent *before* the adoption of the plan. (*Id*. at 12-16 [attaching pages "10" through "14" of Defs.' Reply Memo. of Law].)

Fifth, argue Defendants, in Plaintiffs' response to Defendants' preemption challenge to Plaintiffs' fifth and sixth causes of action (asserting New York State common law claims of breach of contract and fraud), Plaintiffs rely on a case that recognized an exception to the preemption rule where the state law claims against the employer related to a plan that was exempted from ERISA's scope; that case held that where, as here, the state law claims against the employer related to an ERISA plan, the claims are preempted. (*Id*. at 16 [attaching page "14" of Defs.' Reply Memo. of Law].)

## II. GOVERNING LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing Defendants' motions to dismiss for failure to state a claim, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Wade v. Tiffin Motorhomes, Inc.*, 05-CV-1458, 2009 WL 3629674, at *3-5 (N.D.N.Y. Oct. 27, 2009) (Suddaby, J.), which accurately recites that legal standard. In addition, the Court will reference portions of that standard where necessary below in Part III of this Decision and Order. The Court adds only two points.

First, generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the following matters outside of the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[1]

---

[1] *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir.

Second, while generally leave to amend a pleading should be freely given, granting a plaintiff an opportunity to amend before dismissal of his action is not required where the plaintiff has already been afforded the opportunity to amend. *Abascal v. Hilton*, 04-CV-1401, 2008 WL 268366, at *8 (N.D.N.Y. Jan. 13, 2008) (Kahn, J., adopting, on *de novo* review, Report-Recommendation by Lowe, M.J.) ("Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading."), *aff'd*, 357 F. App'x 388 (2d Cir. 2009); *accord*, *Shuler v. Brown*, 07-CV-0937, 2009 WL 790973, at *5 & n.25 (N.D.N.Y. March 23, 2009) (McAvoy, J., adopting Report-Recommendation by Lowe, M.J.), *Smith v. Fischer*, 07-CV-1264, 2009 WL 632890, at *5 & n.20 (N.D.N.Y. March 9, 2009) (Hurd, J., adopting Report-Recommendation by Lowe, M.J.).[2]

---

2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

[2]     *See also Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that denial of leave to amend not abuse of discretion movant has repeatedly failed to cure deficiencies in pleading); *Coleman v. brokersXpress, LLC*, 375 F. App'x 136, 137 (2d Cir. 2010) ("Nor can we conclude that the district court abused its discretion in denying Coleman leave to amend. The district court afforded Coleman one opportunity to amend the complaint, and Coleman made no

**B.      Standards Governing Plaintiffs' Claims**

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiffs' claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for the review of the parties. Rather, he Court will merely reference portions of those standards where necessary below in Part III of this Decision and Order.

---

specific showing as to how he would cure the defects that persisted if given a second opportunity to amend."); *Dyson v. N.Y. Health Care, Inc .,* 353 F. App'x 502, 503-03 (2d Cir. 2009) ("[T]he district court did not abuse its discretion by dismissing Dyson's third amended complaint with prejudice. . . . [T]he district court afforded Dyson three opportunities to file an amended complaint so as to comply with Rule 8(a)(2), and, despite these, she did not plead any facts sufficient to show that she was plausibly entitled to any relief."); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("We do not mean to imply that the court has no power to dismiss a prolix complaint without leave to amend in extraordinary circumstances, such as where leave to amend has previously been given and the successive pleadings remain prolix and unintelligible."); *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (affirming dismissal of *pro se* plaintiff's amended complaint without leave to amend, for failure to state a claim upon which relief can be granted, without engaging in analysis of whether second amended complaint would be futile); *Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) ("Yang's amended complaint fails to remedy this defect in his pleadings. . . .  His equal protection claim is dismissed."), *aff'd*, 71 F. App'x 90 (2d Cir. 2003); *Payne v. Malemathew,* 09-CV-1634, 2011 WL 3043920, at *6 (S.D.N.Y. July 22, 2011) ("Plaintiff has repeatedly failed to cure the defects in his claims despite having received detailed instructions and despite the bases of the dismissals having been specified in advance, and he has not identified any additional facts he could advance now that would address these defects. Accordingly, nothwithstanding Plaintiff's pro se status, leave to amend yet again is denied."); *Advanced Marine Tech. v. Burnham Sec., Inc.*, 16 F. Supp.2d 375, 384 (S.D.N.Y. 1998) ("While that failure to plead special damages with respect to the other alleged representations in theory might be cured by amendment, plaintiff already has amended once and has not sought leave to amend again. Accordingly, the fraud claims will be dismissed except to the limited extend indicated.").

**III.  ANALYSIS**

After carefully considering the matter, the Court grants Defendants' motion to dismiss for each of the reasons stated in their memoranda of law.  *See, supra,* Part III.B.1. and III.B.3. of this Decision and Order.  The Court would add only the following six points.

First, regarding whether Plaintiffs' claims are time-barred, for the sake of brevity the Court will not linger on the fact that the "fraud or concealment" exception to the limitations period contained in ERISA § 413 does not apply to claims brought under ERISA § 204(h).  Even when liberally construed, Plaintiffs' Amended Complaint fails to allege facts plausibly suggesting that Plaintiffs are entitled to "fraud or concealment" exception to the limitations period contained in ERISA § 413, regardless of whether the Court applies the pleading standard set forth in Fed. R. Civ. P. 9(b), or the more-liberal pleading standard set forth in *Twombly*.  (*See generally* Dkt. No. 6.)  Rather, based on the numerous communications from Defendants to Plaintiffs that are able to be considered on Defendants' motion to dismiss (including the Arrington Letter, the Reighter Notice, the brochure, and the Pension Plan Cash Balance Account Statements), there are no allegations of fact plausibly suggesting that Defendants knowingly misrepresented a material fact to induce Plaintiffs to act to their detriment, or hindered their discovery of the alleged breach; and, even if they did, Plaintiffs should have discovered the breach long before September 6, 2006 (six years before they filed their Complaint in this action), especially since the Summary Plan Description was expressly sent in March of 2000.  (Dkt. No. 21, Attach. 2, at 22.)

Second, regarding whether Defendants' ERISA § 204(h) notice was sent before the amendment of the plan, while it is true that the Reighter Notice was not dated, the following four

facts are also true: (1) the Arrington Letter expressly stated that, if the Plan is "approved by the Board," another notice will be sent out, on May 20, 1998 (Dkt. No. 21, Attach. 2, at 5); (2) the Amended Complaint expressly alleges that a "cover letter" was indeed sent out after the Arrington Letter (Dkt. No. 6, at ¶ 34); (3) the "cover letter" appears to be the Reighter Notice (in that the "cover letter" contained a verbatim sentence, and a verbatim expression, that was contained in the Reighter Notice) (*compare* Dkt. No. 6, at ¶¶ 37-38 *with* Dkt. No. 21, Attach. 2, at 5); and (4) the Reighter Notice expressly stated that the Plan "will be modified" on July 1, 1998, indicating that the "possibility" of an amendment (mentioned in the Arrington Letter) had become an actuality, and the amendment had been adopted (Dkt. No. 21, Attach. 2, at 7). These facts plausibly suggest that Defendants' complied with ERISA § 204(h)'s timing requirement (even setting aside Defendants' lack-of-prejudice argument, which the Court alternatively accepts).

Third, regarding whether Defendants sufficiently notified Plan participants that future benefits under the cash balance formula may be smaller than they would have been under the final average pay formula, the Court finds that Defendants did so, based on Plaintiffs' own factual allegations and the referenced documents. The relevant standard is whether the notice contained "a summary of the amendment . . . written in a manner calculated to be understood by the average plan participants. The summary need not explain how the individual benefit of each participant or alternate payee will be affected by the amendment." 26 C.F.R. § 1.411(d)-6T Q & A-10 (1998). Here, the numerous communications from Defendants to Plaintiffs (including the Arrington Letter, the Reighter Notice, the brochure, and the Pension Plan Cash Balance Account Statements) individually and/or together contained a summary of the amendment written in a

manner calculated to be understood by the average plan participants. Moreover, even though the summary need not explain how the individual benefit of each participant or alternate payee will be affected by the amendment (or that the participants' benefit accrual rates may be significantly reduced in the future),[3] the Niagara Mohawk Pension Plan Cash Balance Account Statements sent to participants with the Reighter Letter (which were referenced in Plaintiffs' Amended Complaint and provided by Plaintiffs in response to Defendants' motion) expressly stated that "[t]he rate . . . at which you earn benefits under the new plan . . . can be grater than *or smaller than* the rate at which you earned benefits under the prior plan." (Dkt. No. 6, at ¶ 34; Dkt. No. 26, Attach. 2, at 3, 8 [emphasis added].)

Fourth, regarding whether Plaintiffs' Amended Complaint alleges facts plausibly suggesting that Plaintiffs' did not receive the ERISA § 204(h) notice, the Court finds that the Amended Complaint does not do so. The Amended Complaint alleges (conclusorily) that "[s]ome of the Plan Participants" did not receive any notice. (Dkt. No. 6, at ¶¶ 29, 32, 34, 35, 45.) The allegation does not say "some of the Plaintiffs," nor does it even identify which of the Plaintiffs. Any conclusion that it was the entirety or even a part of the class of 129 Plaintiffs that did not receive any notice whatsoever is purely speculative and not at all plausible. As an alternative reason for rejecting this claim, the Court notes that the governing regulations do not

---

[3] *See Register v. PNC Fin. Servs. Group, Inc.*, 04-CV-6097, 2005 WL 3120268, at *8 (E.D. Pa. Nov. 21, 2005) ("Defendants did not notify participants that their benefit accrual rates would be 'significantly reduced' in the future, but, quite simply, they did not need to."), *aff'd*, 477 F.3d 56 (3d Cir. 2007). The Court notes that government regulations do not, as argued by Plaintiff, require that the written notice state that there may be a significant reduction in the rate of future benefit accrual, but only that the notice be issued *if* the amendment "provides for a significant reduction in the rate of future benefit accrual." 26 C.F.R. § 1.411(d)-6T Q & A-1 (1998).

even require that *all* Plan participants receive the notice–as long as (1) "all but a de minimis percentage" of them receive the notice, and (2) the plan administrator has "made a good faith effort to comply with the requirements of" ERISA § 204(h).  26 C.F.R. § 1.411(d)-6T Q & A-13. Here, such mass receipt of the notice and good-faith effort of Defendants appear plausible based on the allegations of the Amended Complaint and the documents incorporated by reference in, and/or integral to, the Amended Complaint.

Fifth, regarding whether Plaintiffs' third and fourth causes of action for breach of fiduciary duty rely on the same factual predicates as do Plaintiffs' ERISA § 204(h) claims (and whether Plaintiffs' fourth cause of action is duplicative of their third cause of action and, in the alternative, is an improper attempt to base a breach-of-fiduciary-duty claim on the non-fiduciary act of amending an ERISA plan), Plaintiffs do not appear to have opposed this argument in their opposition memorandum of law.  (*See generally* Dkt. No. 26.)  In this District, the failure to oppose a legal argument in response to a motion lightens the movant's burden with respect to that legal argument such that, in order to succeed on that argument, the movant need show only that the argument possesses facial merit.[4]  Here, the Court finds that, at the very least, Defendants' legal argument possesses facial merit.

Sixth and finally, regarding Plaintiffs' cross-motion for leave to file a Second Amended Complaint, this cross-motion is procedurally improper and without merit for each of four

---

[4]     *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting . . . of the motion . . . , unless good cause be shown."); *Zuk v. Onondaga Cnty.*, 09-CV-0272, 2011 WL 4344043, at *4 & nn.1-3 (N.D.N.Y. Sept. 14, 2011) (Suddaby, J.) (reciting point of law and citing cases).

independent reasons: (1) Plaintiffs' cross-motion is unsupported by an affidavit, in violation of Local Rule 7.1(a)(2); (2) Plaintiffs' cross-motion does not (a) set forth specifically the proposed amendments and (b) identify the amendments in the proposed pleading, either through the submission of a red-lined version of the original pleading or other equivalent means, in violation of Local Rule 7.1(a)(2); (3) Plaintiffs' cross-motion is unsupported by an unsigned copy of the proposed Second Amended Complaint, in violation of Local Rule 7.1(a)(4); and (4) under the circumstances, the relevant factors weigh decidedly against granting the motion to amend.[5]

With regard to this fourth reason, the Court notes that Plaintiffs already had an opportunity to correct the pleading deficiencies in question, though their filing of an Amended Complaint filed on November 21, 2012, and their opportunity to submit a proposed Second Amended Complaint on March 15, 2013; however, they have failed to either take advantage of that opportunity or show cause excusing that failure. Indeed, they have not even bothered to submit a proposed Second Amended Complaint during the year since they filed their cross-motion. Moreover, due to Plaintiffs' failure and undue delay, the likelihood has increased that memories of material witnesses have likely faded, and that relevant documents have been destroyed, and Defendants have already incurred the time and expense of filing a motion to dismiss. Finally, given that the pleading defects in Plaintiffs' claims are apparent based on a review of all the relevant documents giving rise to those claims, it is difficult for the Court to imagine how affording Plaintiffs another chance to amend would be productive. Simply stated,

---

[5] *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that permissible grounds upon which to base the denial of a motion for leave to file an amended complaint include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.")

any amendment appears futile.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss Plaintiffs' Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 21) is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' Amended Complaint (Dkt. No. 6) is **DISMISSED**.

Dated: March 31, 2014
Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge